# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | Hon. Marianne O. Battani |
| In re: Electronic Powered Steering Assemblies | |
| THIS RELATES TO: | 2:13-cv-01902-MOB-MKM |
| Automobile Dealership Actions | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 28th day of November 2016 ("Execution Date") by and between Yamada Manufacturing Co., Ltd., Yamada North America, Inc. (together, "Yamada"), and Automobile Dealership Plaintiff Class Representatives ("Automobile Dealership Plaintiffs"), both individually and on behalf of a class of indirect purchasers of Electronic Powered Steering Assemblies (the "Settlement Class"), as more particularly defined in Paragraph 12 below.

WHEREAS, Automobile Dealership Plaintiffs are prosecuting the above *In Re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation") and Case No.: 2:13-cv-01902 (the "Action") on their own behalf and on behalf of the Settlement Class;

WHEREAS, Automobile Dealership Plaintiffs allege that they were injured as a result of Yamada's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Electronic Powered Steering Assemblies (as defined in Paragraph 7 below) in violation of Section 1 of the Sherman Act

and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in Automobile Dealership Plaintiffs' Second Amended Consolidated Class Action Complaint in the Electronic Powered Steering Assemblies Action (the "Complaint");

WHEREAS, Yamada denies Automobile Dealership Plaintiffs' allegations and has asserted defenses to Automobile Dealership Plaintiffs' claims in the Action;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and counsel for Yamada, and this Agreement has been reached as a result of those negotiations;

WHEREAS, Automobile Dealership Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against Yamada, according to the terms set forth below, is in the best interests of Automobile Dealership Plaintiffs and the Settlement Class because of the payment of the Settlement Amount and the value of the Prospective Relief and Cooperation (as those terms are defined below) that Yamada has agreed to provide pursuant to this Agreement;

WHEREAS, Yamada, despite its belief that it is not liable for the claims asserted and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation; to obtain the releases, orders, and judgment contemplated by this Agreement; and to put to rest with finality all claims that have been or could have been asserted against Yamada with respect to Electronic Powered Steering Assemblies based on the allegations in the Action, as more particularly set out below.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the

2

undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and, except as hereinafter provided, without costs as to Automobile Dealership Plaintiffs, the Settlement Class, or Yamada, subject to the approval of the Court, on the following terms and conditions:

A.     Definitions.

1.     "Automobile Dealership Plaintiff Class Representatives" means those Settlement Class Members, as defined in Paragraph 14, below, who are named plaintiffs in the Complaint.

2.     "Cooperation" shall refer to those provisions set forth below in Paragraphs 33-43.

3.     "Cooperation Materials" means any information, testimony, Documents (as defined below) or other material provided by Yamada under the terms of this Agreement.

4.     "Defendant" means any party named as a defendant in the Action at any time up to and including the date when the Court has entered a final order certifying the Settlement Class described in Paragraph 12 and approving this Agreement under Federal Rule of Civil Procedure Rule 23(e).

5.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, electronically stored information. A draft or non-identical copy is a separate document within the meaning of this term.

6.     "Indirect Purchaser States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

7.     "Electronic Powered Steering Assemblies" shall have the same meaning as set

3

forth in the operative complaint at the time this Agreement is executed.

       8.     "Opt-Out Deadline" means the deadline set by the Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class.

       9.     "Released Claims" means the Claims described in Paragraphs 23-24.

      10.     "Releasees" shall refer to (i) Yamada, (ii) all of Yamada's past and present direct and indirect, parents, subsidiary companies and affiliates, including their respective predecessors, successors and assigns, and (iii) each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the persons and each of the persons and entities listed in (i) and (ii). "Releasees" does not include any defendant in the MDL Litigation other than Yamada.

      11.     "Releasors" shall refer to Automobile Dealership Plaintiffs Class Representatives and the members of the Settlement Class, as defined in Paragraph 14, below, and to their past and present officers, directors, supervisors, employees, agents, stockholders, members, attorneys, servants, representatives, parents, subsidiaries, affiliates, principals, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing.

12.  For purposes of this Agreement, the "Settlement Class" is defined as:

All Automobile Dealerships that, from January 1, 2000 through the Execution Date (a) purchased a new Vehicle in the United States which included as a component part one or more Electronic Powered Steering Assemblies, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) indirectly purchased Electronic Powered Steering Assemblies as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and persons who purchased Electronic Powered Steering Assemblies directly or for resale.

13.  "Settlement Class Counsel" shall refer to the law firms of:

BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095

CUNEO GILBERT & LaDUCA, LLP
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016

LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

14.  "Settlement Class Member" means each member of the Settlement Class who has not timely elected to be excluded from the Settlement Class.

15.  "Settlement Amount" shall be $744,000 and the "Settlement Fund" shall be the Settlement Amount plus any income or accrued interest earned on that amount as set forth in Paragraph 26.

16.  "Vehicles" shall refer to four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.

5

B.     Approval of this Agreement and Dismissal of Claims Against Yamada.

17.     Automobile Dealership Plaintiffs and Yamada shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete, and final dismissal with prejudice of the Action as to the Releasees only.

18.     Within forty five (45) days after the execution of this Agreement, Automobile Dealership Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion shall include (i) the proposed form of an order preliminarily approving this Agreement, and (ii) a proposed form of order and final judgment that shall include at least the terms set forth in Paragraph 20 below. The text of the proposed orders shall be agreed upon by Automobile Dealership Plaintiffs and Yamada before submission of the Preliminary Approval Motion.

19.     Automobile Dealership Plaintiffs, at a time to be decided in their sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by Automobile Dealership Plaintiffs (the "Notice Motion"). To mitigate the costs of notice, Automobile Dealership Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements reached. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

20.     Automobile Dealership Plaintiffs shall seek, and Yamada will not object unreasonably to, the entry of an order and final judgment in the Action, the text of which Automobile Dealership Plaintiffs and Yamada shall agree upon. The terms of that proposed order and final judgment will include, at a minimum, the substance of the following provisions:

6

(a)     certifying the Settlement Class described in Paragraph 12, pursuant to Rule 23, solely for purposes of this settlement as a settlement class for the Action;

(b)     as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 and directing its consummation according to its terms;

(c)     directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims.

(d)     as to Yamada, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(e)     reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration and consummation of this settlement, to the United States District Court for the Eastern District of Michigan;

(f)     determining under Rule 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to Yamada shall be final; and

(g)     providing that (i) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including Yamada, to contest certification of any other class proposed in the MDL Litigation, (ii) the Court's findings in the Order shall have no effect on the Court's ruling on any motion to certify any class in the MDL Litigation or on the Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

21.     This Agreement shall become final when (i) the Court has entered a final order certifying the Settlement Class described in Paragraph 12 and approving this Agreement under

7

Rule 23(e) and has entered a final judgment dismissing the Action with prejudice as to Yamada and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Yamada described in (i) above has expired or, if appealed, approval of this Agreement and the final judgment in the Action as to Yamada has been affirmed in its entirety by the Court of last resort to which such appeal has been taken, and such affirmance has become no longer subject to further appeal or review, and no other motion or pleading is pending in any court. It is agreed that the provisions of Rule 60 shall not be taken into account in determining the above-stated times. On the date that Automobile Dealership Plaintiffs and Yamada have executed this Agreement, Automobile Dealership Plaintiffs and Yamada shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 26(h) or 44 of this Agreement.

22.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents, or discussions associated with them (including Cooperation Materials produced pursuant to Paragraphs 33-43), shall be deemed or construed to be an admission by Yamada, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Yamada, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the MDL Litigation, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation, or any other arbitration, action or proceeding whatsoever, against Yamada. Nothing in this Paragraph shall prevent Automobile Dealership Plaintiffs from using and/or introducing into evidence Cooperation Materials produced pursuant to Paragraphs 33-43, subject to the limitations in those paragraphs, against any other defendants in the MDL Litigation, or to

develop and promulgate a plan of allocation and distribution. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by Yamada, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.     Release, Discharge, and Covenant Not to Sue.

23.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 21 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 25 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to (i) any conduct alleged in the Complaint, and (ii) any act or omission of the Releasees (or any of them) concerning Electronic Powered Steering Assemblies, including but not limited to any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaint filed in the Action (the "Released Claims"), provided however, that nothing herein shall release: (1) any claims

9

made by direct purchasers of Electronic Powered Steering Assemblies; (2) any claims made by end payor plaintiffs that are indirect purchasers of Electronic Powered Steering Assemblies (and who are not otherwise members of the Settlement Class); (3) any claims made by truck and equipment dealerships that are indirect purchasers of Electronic Powered Steering Assemblies (4) any claims made by any State, State agency, or instrumentality or political subdivision of a State as to government purchases and/or penalties; (5) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Electronic Powered Steering Assemblies; (6) claims concerning any automotive part other than Electronic Powered Steering Assemblies; (7) claims under laws other than those of the United States relating to purchases of Electronic Powered Steering Assemblies made by any Releasor outside of the United States; and (8) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State.  Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless this Agreement is, for any reason, not finally approved or terminated.

24.     In addition to the provisions of Paragraph 23 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, as set out in Paragraph 21 of this Agreement, any and all provisions, rights, and benefits, as to their claims concerning Electronic Powered Steering Assemblies conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL
> RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR
> SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME
> OF EXECUTING THE RELEASE, WHICH IF KNOWN BY
> HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS

OR HER SETTLEMENT WITH THE DEBTOR;

or by any equivalent law or statute of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 23 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that Yamada and Automobile Dealership Plaintiffs have agreed to release pursuant to Paragraph 23, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.      Settlement Amount.

25.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Yamada, shall pay or cause to be paid the Settlement Amount of U.S. $744,000. The Settlement Amount shall be paid in U.S. dollars into an escrow account to be administered in accordance with the provisions of Paragraph 26 of this Agreement (the "Escrow Account") within thirty (30) days following entry of an order preliminarily approving this Agreement.

26.     Escrow Account.

(a)     The Escrow Account will be established at Huntington National Bank with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions regarding investment types and reinvestment of income and proceeds mutually acceptable to Settlement Class Counsel and Yamada, such escrow to be administered by the Escrow Agent under the Court's continuing supervision and control.

11

(b)      The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.   Yamada shall bear no risk related to the management and investment of the Settlement Fund.

(c)      All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)      Automobile Dealership Plaintiffs and Yamada agree to treat the Settlement Fund as being at all times qualified settlement funds within the meaning of Treas. Reg. § 1.468B-1. In addition, Settlement Class Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 26, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date.   Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Settlement Class Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Amount being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.

(e)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator of the Settlement Fund shall be Settlement Class Counsel. Settlement Class Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns (as well as the election described in Paragraph 26(d) above) shall be consistent with Paragraph 26(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest, or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 26(f) hereof.

(f)     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Yamada or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 26(d) through 26(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 26(e) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Yamada nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Settlement Class Counsel shall indemnify and hold harmless the Releasees for Taxes and Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund

without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Yamada shall not be responsible or have any liability therefor. Automobile Dealership Plaintiffs and Yamada agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 26(d) through 26(f).

(h)     If this Agreement does not receive final Court approval, including final approval of the Settlement Class as defined in Paragraph 12, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Yamada into the Settlement Fund (other than costs expended or incurred in accordance with Paragraphs 26 and 29), shall be returned to Yamada from the Escrow Account by the Escrow Agent, along with any interest accrued thereon, within thirty (30) calendar days of the court's final determination denying final approval of the Agreement and/or Settlement Class.

27.     Prospective Relief.

Subject to the provisions hereof, and in full, complete, and final settlement of the Action as provided herein, Yamada further agrees that it will not engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of Electronic Powered Steering Assemblies for a period of 24 months from the date of the entry of final judgment.

28.     Exclusions from the Settlement Class.

Subject to Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt Out Deadline, which shall be the date set by the Court by which any class member must request exclusion from the Settlement Class. Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement. Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Settlement Agreement upon final approval. Settlement Class Counsel shall, within ten (10) business days after the Opt Out Deadline, provide Yamada with a list and copies of all opt out requests it receives in the Action and shall file with the Court a list of all members of the Settlement Class who timely and validly opted out of the settlement.

(a)     Subject to Court Approval, any member of the Settlement Class who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. Yamada reserves all of its legal rights and defenses, including but not limited to any defenses relating to whether any excluded member of the Settlement Class is an indirect purchaser of Electronic Powered Steering Assemblies or has standing to bring any claim against Yamada.

(b)     Subject to Court Approval, in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, street address, telephone number, and email address. Further, the member of Settlement Class must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the settlement. Any member of the Settlement Class that submits a written request for exclusion may also

15

identify the number of Vehicles purchased from January 1, 2000 through the Execution Date of this Agreement as requested in the notice to the Settlement Class as provided in Paragraph 19.

(c)     Yamada or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days after the Opt Out Deadline.

(d)     Within twenty (20) business days following the Opt Out Deadline in accordance with the terms of this Paragraph 28, or as soon thereafter as practicable, the parties shall determine the total number of automobile dealer locations in the Indirect Purchaser States from January 1, 2000 through the Execution Date that: (a) purchased a new Vehicle in the United States which included as a component part one or more Electronic Powered Steering Assemblies, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, identified to counsel for Yamada by Settlement Class Counsel, or (b) indirectly purchased Electronic Powered Steering Assemblies as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, identified to counsel for Yamada by Settlement Class Counsel (defined as "Total Number of Damages Class Members" for purposes of calculating the Total Opt Out Percentage defined below). The parties shall determine the Total Number of Damages Class Members based upon reasonably available public information, and each dealership location shall be counted as a separate Settlement Class Member for the purposes of the calculations in this subparagraph, Paragraph 28(d). In the event the parties mutually agree that non-public information is required to determine the Total Number of Damages Class Members, the parties shall identify an

appropriate source of, and Yamada shall pay for, the reasonable costs incurred in securing the necessary information. Within ten (10) business days following the determination of the Total Number of Damages Class Members, the parties shall calculate the percentage of the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Class ("Total Opt Out Percentage"), provided that Yamada shall have the sole option to waive the calculation and, by doing so, waive its rights under the provisions of this subparagraph, Paragraph 28(d). The Total Opt Out Percentage is a fraction, the numerator of which is the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Class, and the denominator of which is the Total Number of Damages Class Members. Should the Total Opt Out Percentage be more than ten percent (10%), Yamada shall be entitled to a reduction in the total Settlement Amount that the Class would receive measured by the difference between the Total Opt Out Percentage and ten percent (10%). As an example, for the avoidance of doubt, if the Total Opt Out Percentage were twenty-five (25%) percent, Yamada shall be entitled to a fifteen percent (15%) reduction.

29.     Payment of Expenses.

(a)     Yamada agrees to permit a reasonable portion of the Settlement Fund to be used towards notice to the Settlement Class and the costs of administration of the Settlement Fund. The notice and administration expenses are not recoverable if this settlement does not become final or is terminated to the extent such funds have actually been expended or incurred for notice and administration costs. Other than as set forth in this Paragraph 29 and Paragraph 26, Yamada shall not be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or Special

17

Master, appeals, trials or the negotiation of other settlements, or for class administration and costs.

(b)    To mitigate the costs of notice and administration, Automobile Dealership Plaintiffs shall use their best efforts, if practicable, to disseminate notice with any other settlements reached with other defendants in the MDL Litigation and to apportion the costs of notice and administration on a pro rata basis across the applicable settlements.

E.    The Settlement Fund.

30.    After this Agreement becomes final within the meaning of Paragraph 21, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court.  In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration except as expressly otherwise provided in Paragraphs 26 and 29 of this Agreement.

31.    Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as provided by Court Order.  Yamada and the other Releasees shall not be liable for any costs, fees, or expenses of any of Automobile Dealership Plaintiffs or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

32.    Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives.

(a)    Settlement Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of

18

one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the Court (the "Fee and Expense Award"). Settlement Class Counsel reserves the right to make additional applications for Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall Yamada or any other Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to Court approval, Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses and incentive awards. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to Paragraph 26(h) or Paragraph 44.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund is not part of this Agreement, and is to be considered by the Court separately from the Court's consideration of the

fairness, reasonableness and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect the finality of the final approval of the settlement.

(d)     Neither Yamada nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Automobile Dealership Plaintiffs of any Fee and Expense Award in the Action.

(e)     Neither Yamada nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Automobile Dealership Plaintiffs and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

33.     In return for the release and discharge provided herein, Yamada agrees to pay the Settlement Amount and be bound by the Prospective Relief described in Paragraph 27, and further agrees to use its best efforts to provide satisfactory and timely Cooperation, as set forth specifically in Paragraphs 34-43 below, until the time all Actions in *In re Automotive Parts Antitrust Litigation*, Master File No. 2:12-md-02311, Case No. 2:13-cv-01902 are dismissed. Cooperation will take place consistent with the timing set forth specifically below, and in a manner that is in compliance with Yamada's obligations to Government Entities (defined as the United States Department of Justice ("DOJ"), the Japanese Fair Trade Commission, the European Commission, or any other government entity). Settlement Class Counsel shall use their best efforts to coordinate their request for Cooperation so as to avoid all unnecessary duplication and expense.

34.     *Identity of Individuals.* Within five (5) business days of the Execution Date of

this Agreement, Counsel for Yamada shall provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of Yamada who: (1) were interviewed and/or prosecuted by any Government Entity in connection with alleged price-fixing, bid rigging and market allocation of Electronic Powered Steering Assemblies; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Electronic Powered Steering Assemblies; and/or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ's investigation into alleged antitrust violations with respect to Electronic Powered Steering Assemblies.

35.   *Transactional Data*.

(a)   Yamada North America, Inc. and Yamada Manufacturing Co., Ltd. will use their best efforts to complete the production of pre-existing transactional data, no later than one hundred twenty (120) and one hundred eighty (180) days, respectively, after preliminary approval of this Agreement, concerning their bids for and sales of Electronic Powered Steering Assemblies in the United States or for use in Vehicles, identified to the best of their knowledge, sold in the United States and sold to Original Equipment Manufacturers, or other purchasers of Electronic Powered Steering Assemblies from January 1, 1998 through the Execution Date. Yamada will consider in good faith any request made by Settlement Class Counsel for additional transactional data.

(b)   In addition, Yamada will provide, in response to a written request from Settlement Class Counsel, a single production of electronic transactional data concerning bids for and sales of Electronic Powered Steering Assemblies generated during the two years after the Execution Date of this Agreement, as it exists in Yamada's electronic databases at the time of the request, within sixty (60) days of the receipt of such request.   Yamada will preserve such

21

transactional data until two years after the Execution Date of this Agreement. For purposes of all subsections of this Paragraph 35, Yamada will not be obligated to do any analyses of the data for Settlement Class Counsel outside of the interviews described in Paragraph 38. Yamada will produce transactional data only from existing electronic transaction databases and will not be required to compile any data from individual invoices, individual personal computers, or transactional Documents, except that, to the extent Yamada has not recorded or maintained electronic transactional data for any period between January 1, 1998 and two years from the Execution Date of this Agreement, then Yamada will use reasonable efforts to produce existing hard copy records of sales transactions not recorded or maintained electronically in the existing electronic sales transaction database.

36.     After conducting a reasonable search, Yamada shall, to the best of its knowledge, identify those Vehicles sold in the United States from January 1, 1998 through the Execution Date of this Agreement that contain Electronic Powered Steering Assemblies sold by Yamada.

37.     *Documents*. At the request of Automobile Dealership Plaintiffs and subject to meet and confer with Yamada as to any reasonable limitations on this obligation, Yamada will produce, no later than one hundred twenty (120) days after the Execution Date of this Agreement but no sooner than thirty (30) days after preliminary approval of this Agreement, the following categories of non-privileged and potentially relevant Documents ("Relevant Documents") to the Automobile Dealership Plaintiffs:

(a)     documents provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Electronic Powered Steering Assemblies;

(b)     documents concerning Yamada's determination of their prices for

22

Electronic Powered Steering Assemblies sold in the United States and/or for use in Vehicles to be sold in the United States;

      (c)     documents showing how employees were trained or instructed to bid and set prices for Electronic Powered Steering Assemblies in the United States and/or for use in Vehicles to be sold in the United States; and

      (d)     documents relating to issued requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Electronic Powered Steering Assemblies in the United States and for Vehicles to be sold in the United States.

As to Documents in Yamada's possession, custody, or control that are not listed above, Yamada will consider in good faith any reasonable request by Automobile Dealership Plaintiffs to collect and produce such Documents, provided the request would not impose an undue burden on Yamada. Yamada will provide English translations of any documents produced in accordance with the provisions of this Paragraph 37 to the extent that such translations may exist.

     38.    *Attorney Proffers and Witness Interviews.* Additionally, Yamada shall use its best efforts to cooperate with Settlement Class Counsel as set forth in Paragraph 38 below.

      (a)     Yamada's counsel will make themselves available at a mutually agreed location in the United States for up to two (2) meetings of one business day each to provide an attorney's proffer of facts known to them. Yamada further agrees to make three (3) persons available for interviews and depositions, provide a reasonable number of declarations or affidavits from the same persons, and use best efforts to make those persons available to testify at trial. The deposition shall be conducted at a mutually agreed-upon location in the United States, and shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a

language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days.

        (b)     In addition to its Cooperation obligations set forth herein, Yamada agrees to produce through affidavit(s), declaration(s) and/or at trial, in Settlement Class Counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any documents or transactional data produced or to be produced by Yamada. Settlement Class Counsel agrees to use their best efforts to obtain stipulations that would avoid the need to call Yamada witnesses at trial for the purpose of obtaining such evidentiary foundations.

        39.     In the event that Yamada produces Documents or provides declarations or written responses to discovery to any party or nonparty in the actions in the MDL Litigation, concerning or relating to the Action ("Relevant Production"), Yamada shall produce all such Documents, declarations or written discovery responses to Automobile Dealership Plaintiffs contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by Yamada to Automobile Dealership Plaintiffs. This Agreement does not restrict Settlement Class Counsel from noticing, attending and/or participating in any deposition in the MDL Litigation. Settlement Class Counsel may notice, attend and/or participate in any depositions of Yamada's witnesses in addition to the depositions set forth in Paragraph 38, and Settlement Class Counsel together with settlement class counsel for the end-payor plaintiffs ("End-Payor Plaintiffs") may ask questions for a combined total of three (3) hours at such deposition, provided that the time for participation of Settlement Class Counsel and settlement class counsel for the End-Payor Plaintiffs shall not expand the time permitted for the deposition as may be provided by the Court,

and Settlement Class Counsel will not ask the Court to enlarge the time of any deposition noticed of an Yamada current or former employee. Participation by Settlement Class Counsel in the depositions discussed in this Paragraph will not limit the number of depositions to be provided under Paragraph 38 above. Automobile Dealership Plaintiffs and Settlement Class Counsel agree to use their best efforts to ensure that any depositions taken under Paragraph 38 above are coordinated with any other deposition noticed in the MDL Litigation to avoid unnecessary duplication.

40. Yamada's obligations to provide Cooperation shall not be affected by the releases set forth in this Settlement Agreement. Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, Yamada's obligations to provide Cooperation under this Agreement shall continue only until otherwise ordered by the Court, or the date that final judgment has been entered in all of the actions in the MDL Litigation against all Defendants. For purposes of this Paragraph, the term "final" shall have the same meaning as set forth in Paragraph 21.

41. In the event that this Agreement fails to receive final approval by the Court, including final approval of the Settlement Class as defined in Paragraph 21, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Automobile Dealership Plaintiffs nor Settlement Class Counsel shall be permitted to introduce into evidence against Yamada, at any hearing or trial, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Action, any documents provided by Yamada and/or the other Releasees, their counsel, or any individual made available by Yamada pursuant to Cooperation (as opposed to from any other source or pursuant to a court order). This limitation shall not apply to any discovery of Yamada which Settlement Class Counsel

participate in as part of the MDL Litigation. Notwithstanding anything contained herein, Automobile Dealership Plaintiffs and the Settlement Class are not relinquishing any rights to pursue discovery against Yamada in the event that this Agreement fails to receive final approval by the Court, including final approval of the Settlement Class as defined in Paragraph 12, or in the event that it is terminated by either party under any provision herein.

42.    Yamada and other Releasees need not respond to formal discovery requests from Automobile Dealership Plaintiffs or otherwise participate in the Action during the pendency of this Agreement, with the exception of the Cooperation provisions set forth above in Paragraphs 33-43.  Other than to enforce the terms of this Agreement, neither Yamada nor Automobile Dealership Plaintiffs shall file motions against the other, in the Action, during the pendency of this Agreement.

43.    If Settlement Class Counsel believes that Yamada or any current or former employee, officer or director of Yamada has failed to cooperate under the terms of this Agreement, Settlement Class Counsel may seek an Order from the Court compelling such cooperation. Nothing in this provision shall limit in any way Yamada's ability to defend the level of Cooperation it has provided or to defend its compliance with the terms of the Cooperation provisions in this Agreement.

G.    Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

44.    If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify the Settlement Class in accordance with the specific Settlement Class definitions set forth in this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgments provided for in Paragraph 21 of this Agreement, or if the Court enters the final judgments and appellate review is sought, and on such review, such final judgments are not affirmed in its entirety, then Yamada and Automobile Dealership

Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 56. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Funds shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

45. In the event that this Agreement does not become final as set forth in Paragraph 21, or this Agreement otherwise is terminated pursuant to Paragraph 44, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to Yamada less only disbursements made in accordance with Paragraphs 26 and 29 of this Agreement. Yamada expressly reserves all rights and defenses if this Agreement does not become final.

46. Further, and in any event, Automobile Dealership Plaintiffs and Yamada agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by Yamada, or the other Releasees, to be used against Yamada, or of (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, to be used against Yamada, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation or in any other action or proceeding, against Yamada. Nothing in this paragraph shall prevent Automobile Dealership Plaintiffs from using Cooperation Materials produced by Yamada against any other defendants in any actions to establish (i) or (ii) above.

47. This Agreement shall be construed and interpreted to effectuate the intent of the

parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

48.     The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 17-21 hereof, appropriate notice (i) of the settlement; and (ii) of a hearing at which the Court will consider the approval of this Agreement, will be given to the Settlement Class.

H.     Miscellaneous.

49.     Yamada shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

50.     This Agreement does not settle or compromise any claim by Automobile Dealership Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than Yamada. All rights against such other Defendants or alleged co-conspirators are specifically reserved by Automobile Dealership Plaintiffs and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than Yamada and the other Releasees, for sales made by Yamada and Yamada's alleged illegal conduct are specifically reserved by Automobile Dealership Plaintiffs and Settlement Class Members.  Yamada's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than Yamada's and the other Releasees.  Yamada shall not be responsible for any payment to Automobile Dealership Plaintiffs other than the amount specifically agreed to in Paragraph 25 of this Agreement.

51.     The United States District Court for the Eastern District of Michigan shall retain

jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Automobile Dealership Plaintiffs and Yamada, including challenges to the reasonableness of any party's actions. This Agreement shall be governed by and interpreted according to the substantive laws of the state of Michigan without regard to its choice of law or conflict of laws principles. Yamada will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

52.     This Agreement constitutes the entire, complete and integrated agreement among Automobile Dealership Plaintiffs and Yamada pertaining to the settlement of the Action against Yamada, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Automobile Dealership Plaintiffs and Yamada in connection herewith. This Agreement may not be modified or amended except in writing executed by Automobile Dealership Plaintiffs and Yamada, and approved by the Court.

53.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Automobile Dealership Plaintiffs and Yamada. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Automobile Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than Yamada entities which are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

54.     This Agreement may be executed in counterparts by Automobile Dealership Plaintiffs and Yamada, and a facsimile signature shall be deemed an original signature for

purposes of executing this Agreement.

55.     Neither Automobile Dealership Plaintiffs nor Yamada shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

56.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

57.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to Court approval.

*[signature pages follow]*

Dated: November 28, 2016

*Don Barrett by JWC with permission*

Don Barrett
David McMullan
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

Jonathan W. Cuneo
Joel Davidow
Yifei Li
CUNEO GILBERT & LaDUCA, LLP
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202)789-3960

*SHAWN RAITER by JWC with permission*

Shawn M. Raiter
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

*Interim Co-Lead Class Counsel and Settlement Class Counsel for Automobile Dealership Plaintiffs*

31

Dated:  November 28 2016

Donald M. Barnes
Jay L. Levine
Molly S. Crabtree
**PORTER WRIGHT MORRIS
& ARTHUR LLP**
1900 K Street, NW, Ste. 1110
Washington, DC 20006
Telephone: (202) 778-3054
Facsimile: (202) 778-3063
dbarnes@porterwright.com
jlevine@porterwright.com
mcrabtree@porterwright.com

*Counsel for Defendants Yamada Manufacturing
Co., Ltd. and Yamada North America, Inc.*